James H. KINDRED, Appellant,

v.

STATE of Indiana, Appellee.

No. 1085 S 406.

Supreme Court of Indiana.

April 6, 1988.

Michael E. Hunt, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Conspiracy to Commit the Crime of Escape, a Class D felony, for which he was sentenced to four (4) years. He was also found to be an Habitual Offender, and his sentence was enhanced by thirty (30) years, for a total sentence of thirty-four (34) years.

The facts are: On February 17, 1984, appellant was incarcerated in the Morgan County Jail in Martinsville, Indiana, along with Nelson Wright. On several occasions in March and April of 1984, appellant contacted Tammy Baber, Wright's fiancee, and threatened to harm her and her family if she failed to help him escape. By his instructions, she left her vehicle at a local restaurant; when she returned, she found therein a bag containing eleven hacksaw blades and $75.00 in currency. After several unsuccessful attempts to slip some of the blades into the jail under a door, Baber managed on April 15, 1984, to pass them through a window.

Subsequently, appellant was transferred to the Putnam County Jail. Shortly thereafter, a Morgan County Jail inmate contacted his attorney, who relayed to Morgan County Sheriff Paul Mason information of an impending escape by appellant and Wright. Upon investigation, Sheriff Mason discovered hacksaw blades in his jail and alerted Sheriff Gary Hoffa of Putnam County, who found more hacksaw blades in his jail and among appellant's possessions. Upon appellant's transfer to the Department of Correction, more blades were found in his possession. A search of Tammy Baber's vehicle turned up more hacksaw blades as well as letters written to her from Wright and from appellant, who had apprised her of his plans to escape from both the Morgan and Putnam County Jails.

Appellant contends the trial court erred when it failed to expressly advise him of the dangers of proceeding *pro se;* he claims "there exists no record to indicate an intelligent and knowing waiver of counsel in this case." We disagree. The record reveals that appellant had represented himself in numerous prior criminal cases. He also documented, within the record, his not insubstantial legal experience; in his "Motion for the Defendant to Act as Co–Counsel," appellant alleged the following:

> "1.) The defendant has ten (10) years experience as a paralegal, including lay-advocate representation in over 300 adversary proceedings.
>
> 2.) The defendant spent several year's [sic] as a para-legal liaison with the State Public Defenders [sic] Office, the Legal Service Organization of Indianapolis and the American Civil Liberties Union.
>
> 3.) The defendant has five (5) year's [sic] experience in briefing to the United States District Federal Courts and Seventh Circuit Court of Federal Appeals [sic]."

Appellant cites *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed. 2d 562 for the requirement that a defendant "should be made aware of the dangers and disadvantages of self-representation,

so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582. In the case at bar, appellant had requested pauper appointment of a specific attorney, which request was granted. Appellant then filed a motion to act as co-counsel. When that motion was denied, he orally moved to proceed as his own counsel, stating "I am now invoking Furetta [sic] versus California, 95 Supreme Court, 2525 ... and my 6th Amendment Right to proceed as my own Counsel...." We fail to see how appellant could personally invoke *Faretta* in the same breath as his request to proceed *pro se* without being informed of that case's cautionary holding and the import of its requirements.

Further, when asked by the trial court, "You intend to proceed per-se [sic]?" "You consider yourself capable of doing that?" "You understand that you will be held in strict accordance with all procedural details as if you were an attorney, as we proceed?" Appellant replied, "That is correct." "I do." "I do." The record clearly demonstrates the trial court made certain appellant was aware of his right to counsel and the disadvantages of self-representation.

■ Appellant contends the trial court erred when it refused his request for standby counsel after appellant elected to proceed *pro se*. However, "[t]here is no constitutional right to such hybrid representation and a trial court may, in its discretion, deny a motion requesting creation of such a scheme." *Averhart v. State* (1984), Ind., 470 N.E.2d 666, 689, *cert. denied*, 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 323. We noted above that appellant's request to proceed *pro se* resulted from a denial of his request to act as co-counsel with his appointed counsel. Such request may be granted at the discretion of the trial court, but is not a constitutional right. *U.S. v. Gaines* (N.D.Ind.1976), 416 F.Supp. 1047. The court has similar discretion regarding standby counsel. *Id.* It is clear, in light of the record as a whole, that appellant was determined to act as his own counsel. He

rejected his appointed counsel, with whom he was not dissatisfied, only upon learning he could not proceed as co-counsel. Indeed, at his sentencing hearing, appellant turned down the court's offer to appoint counsel in favor of completing his motion to correct error himself. The trial court was within its discretion in denying the request for standby counsel.

■ Appellant contends the trial court erred when it denied his motion for continuance based upon his physical inability to proceed at trial as his own counsel. He argues that his rights to self-representation, cross-examination and a fair trial were violated because his inflamed throat and resulting laryngitis prevented him from proceeding to trial *pro se*. At a hearing on the motion, the trial judge relied upon a physician's prognosis that although appellant's voice might be somewhat affected, it would not get any worse nor become a permanent affliction, nor would appellant infect others in the courtroom. The trial court ruled that appellant was not too ill to proceed and denied the motion. Denial of a motion for continuance based upon the defendant's illness will not be reversed absent an abuse of discretion resulting in prejudice to the defendant. *See Smith v. State* (1986), Ind., 490 N.E.2d 748. On the day this motion was heard, appellant argued *pro se* numerous motions at length. We see no reason to overturn the trial court's ruling that appellant was fit to proceed. Denial of the continuance based on medical inability was not error.

■ Appellant contends the trial court erred when it denied his motion for continuance based on the State's failure to provide timely pretrial discovery and on the Court Clerk's failure to provide service of process to appellant. He filed a motion for discovery on July 24, 1984; on October 26, 1984, the court issued a discovery order. On November 16, 1984, appellant filed a motion for production of photographic evidence and a motion to disclose impeachment evidence and testimony. At a hearing December 21, 1984, the court ordered the State to comply with the October 26 order. The State filed responses on Janu-

ary 7, January 14, and January 21, the day of the trial. On January 9, 1985, appellant requested fifty (50) subpoenas from the Court Clerk. Because they were sent to him unsigned and unsealed, and because the Morgan County Sheriff had told him that out-of-county subpoenas were to be served by certified mail, appellant erroneously concluded he would have to mail them back to the clerk for sealing, who would mail them back to appellant for mailing to the witnesses. As a result, appellant never sent out any subpoenas.

On the trial date, appellant moved for a continuance based on the denial of discovery and service of process. His motion, not being supported by an affidavit filed five or more days before trial, clearly failed to comply with the requirements of Ind. Code § 35-36-7-1 and thus its denial is a matter of the trial court's discretion. *Dillon v. State* (1983), Ind., 448 N.E.2d 21. To obtain a reversal, appellant must show he was prejudiced by the court's abuse of its discretion. *Smith, supra.* At the hearing on his motion and in his brief as well, appellant failed to show how his defense was prejudiced by the State's allegedly belated compliance with discovery orders. Rather, the record shows that had appellant made a diligent effort, he could have deposed witnesses as he was made aware of them in plenty of time to mount a defense. The trial court had ample reason to find substantial compliance with its discovery orders. Similarly, had appellant completed the subpoena forms and returned them to the clerk, or had he informed the court of process problems prior to the trial date, or had he accepted the court's offer to serve process on his witnesses, appellant could have proceeded with his defense. There was no error in the denial of the motion for continuance based on lack of discovery and process.

Appellant separately contends that fundamental error occurred when the State withheld discovery of certain documents, photographs, and witness immunity agreements. However, the State's first discovery response adequately apprised appellant of these materials; and the record indicates that no witness immunity agree-

ments were made prior to the trial. In addition, procedures undertaken to protect the inmate who had alerted authorities to appellant's escape plans hardly qualify as discoverable impeachment information. Moreover, as these procedures were brought out by the State at trial, no prejudice accrued to appellant that arose to the level of fundamental error.

Appellant contends the trial court committed fundamental error when on August 29, 1984, it obtained a waiver of his early trial request filed *pro se* on June 29, 1984. On August 29, appellant was arraigned at his first appearance before Special Judge Kern. Appellant requested pauper counsel be appointed before disposition of any of his pending *pro se* motions. However, the motion under consideration at that time, entitled "Motion for Arraignment," included an invocation of appellant's Sixth Amendment right to a speedy trial. In order to schedule the next proceeding in the case, the court asked appellant to clarify his motion. He replied: "... I filed a Motion for Arraignment, so the Court would proceed with an arraignment. At this time .. No, I don't think I will invoke a Speedy trial right at this time .." To further clarify, the court asked:

> "Okay, so you are telling me the words in that Motion .. that say you invoke your 6th Amendment Rights to a Speedy Trial, you did not mean for that to constitute a trial rule 70 .. Motion for a Speedy Trial, which would mean you would have to be tried within 70 days?"

To which appellant replied:

> "At the time I did, but now I withdraw it, because I just went through one lengthy trial procedure and .. I'll probably be tied up in Motion to Correct Errors and other matters for another month. So I would withdraw it on the record then."

Thus the record reveals appellant, for his own convenience, waived his speedy trial request.

Appellant's counsel entered an appearance on October 11, 1984. The following day, appellant filed *pro se* a second motion

for a speedy trial. Subsequently, on October 26, 1984, when his request to proceed as co-counsel was denied, all motions submitted *pro se* by appellant after the appointment of his pauper attorney were stricken by the trial court. Appellant contends the striking of his second speedy trial motion was error. However, there is no Sixth Amendment right to act as co-counsel. And since appellant was represented by counsel when the second motion was filed *pro se*, it was within the trial court's discretion to accept and respond to it or to strike it. *Lock v. State* (1980), 273 Ind. 315, 403 N.E.2d 1360. It was not error for the trial court to accept appellant's withdrawal of his first speedy trial motion nor to strike his second one.

■ Appellant contends the trial court erred by failing to establish a knowing, intelligent and voluntary waiver of his constitutional rights prior to granting his motion to withdraw from the trial proceedings. On the first day of trial, appellant's motions for continuance based on the alleged lack of discovery and medical inability to proceed were denied. Appellant then moved to withdraw from the proceedings based upon his alleged illness. His motion was denied, the court stating, "I am not going to allow you to withdraw right now because of your acute laryngitis that in my opinion does not exist." Appellant then orally moved to withdraw for the "reason" that "It is my constitutional right to withdraw from the proceedings." The court assured him the trial would continue in his absence. Appellant then renewed his objection to the court's "prior failure to appoint standby counsel," whereupon the State asked him if he desired counsel to be appointed for him at that time. Appellant became obstreperous and refused to answer that question as well as others directed to his understanding of his constitutional rights asked by the State. Nevertheless, the State insisted upon its request to "make sure that the record reflects that it's a knowing intelligent and voluntary waiver." In response, the court went to great lengths to ascertain from appellant that his medication did not affect his judgment and that he understood his rights to a

jury trial, to be present at trial, to confront and cross-examine witnesses against him, and to testify or remain silent.

In light of the entire record, we have no doubt that appellant was sufficiently aware of his Fifth and Sixth Amendment rights so as to knowingly waive them. We further note that a criminal defendant can waive his right to be present at trial by his contumacious conduct and his express statement that he does not wish to remain during the proceedings. *Perry v. State* (1984), Ind., 471 N.E.2d 270. When a defendant appears for the beginning of a trial and then departs, the trial may continue without him. *Fennell v. State* (1986), Ind., 492 N.E.2d 297. Here, a valid waiver of appellant's constitutional rights was clearly established prior to granting his motion to withdraw. The trial court did not err.

■ Appellant contends the trial court erred in its denial of his motion to dismiss the habitual offender information. He first argues that the constitutional prohibition against double jeopardy was violated because the same prior convictions as set forth in the instant information formed the basis of a charge in Monroe County where appellant was found not to be an habitual offender, prior to the instant trial in Morgan County. In his reply brief, appellant restates the issue: "Does implicit acquittal result which bars subsequent habitual proceedings because of the 'trial-like' proceedings invoked against the defendant." The answer, clearly, is "No." Failure to find a defendant to be an habitual offender does not, even impliedly, "acquit" him of the prior convictions alleged; it does not act to expunge his record of the fact of the prior convictions. As we have held in preceding opinions:

> "The action of the trial court at the previous habitual offender trial did not operate to 'acquit' defendant of the two prior felony convictions.... It is clear that there is nothing to prevent the state from alleging the fact of the prior felony convictions again at the instant trial since those two prior convictions do still

exist." *Durham v. State* (1984), Ind., 464 N.E.2d 321, 324.

Thus alleging the same prior convictions as were used in a preceding habitual proceeding did not subject appellant to double jeopardy.

Appellant also argues the information was defective because it failed to specify that the prior convictions were unrelated and that he was being charged as an habitual offender. However, the information clearly set out the charge of habitual offender and clearly sets out that he had been twice convicted in 1968 and had three felony convictions in 1973. Each of the five felonies had a separate cause number. The information was clearly specific enough to permit appellant to defend himself. *Griffin v. State* (1982), Ind., 439 N.E.2d 160. Proof that the prior felonies were in fact unrelated need not be adduced until trial. *See Steelman v. State* (1985), Ind., 486 N.E.2d 523. The information was not defective.

■ Appellant contends the trial court erred in denying his motion to strike allegedly constitutionally infirm convictions from the habitual offender information. He claims two of the convictions violated his Sixth Amendment right to a jury trial, and another violated his Fifth Amendment right against self-incrimination. Prior convictions cannot be collaterally attacked at the habitual offender proceeding. *Williams v. State* (1982), Ind., 431 N.E.2d 793. A prior conviction can only be questioned there when its invalidity is apparent on its face. *Edwards v. State* (1985), Ind., 479 N.E.2d 541. The infirmities alleged by appellant affect only the waiver portion of the guilty pleas. It was therefore not a denial of due process to relegate appellant to a direct attack on the prior convictions. The trial court did not err in denying the motion to strike.

■ Appellant contends the habitual offender verdict form submitted to the jury was so improper that it represented fundamental error. He first argues the information and verdict form each show a conviction of "Aggravated Assault and Battery with Intent to Kill," in cause number 73579, with a sentence of one to five (1–5) years. However, the court transcript shows that in that cause appellant entered a plea of guilty to "aggravated assault" and received a suspended sentence. Even if we would assume for the sake of argument that such error was sufficient to eliminate that prior conviction, the record clearly shows that the jury found that appellant had accumulated four other prior felony convictions. Hence he was not prejudiced by the finding of a fifth felony conviction. *Kalady v. State* (1984), Ind., 462 N.E.2d 1299. Of the four remaining prior convictions, appellant claims two of them, for which he was sentenced on the same day, are not "unrelated" to each other, as required by Ind.Code § 35–50–2–8. If we assume for the sake of argument that these two felonies were in fact related, either of them can be paired with either of the remaining two convictions listed on the verdict form. Thus their inclusion on the form was permissible surplusage and not solely intended to prejudice appellant. *See St. Mociers v. State* (1984), Ind., 459 N.E.2d 26.

■ Appellant also asserts that the specific nature of the verdict form, by allowing the jury to make individual findings on the prior felony convictions, rendered the habitual offender proceeding a guilt-finding process as to the prior felonies in violation of the Fifth Amendment prohibition against double jeopardy. Habitual offender determinations are not findings of guilt of a separate offense and thus do not violate the double jeopardy clause. *See Badelle v. State* (1982), Ind., 434 N.E.2d 872. The habitual offender verdict form did not represent fundamental error.

■ Appellant contends his conspiracy conviction represents fundamental error because the charging information violated his due process rights. He argues it failed to specifically charge each element of the crime of escape, *i.e.*, it failed to state that appellant "conspired to intentionally flee from lawful detention," and thus insufficiently advised him so as to enable him to prepare a defense. We disagree. The in-

formation specifies the Indiana Code sections alleged to have been violated and it specifically sets out his agreement with others to effect an escape from the Morgan County Jail. The elements of the crime charged may be set forth in terms of the accused's alleged conduct instead of in general terms. *See McCune v. State* (1986), Ind., 491 N.E.2d 993. The conspiracy information complies sufficiently with Ind.Code § 35–34–1–2 and does not represent fundamental error.

▆▆▆ Appellant contends the trial court erred in denying his motion for appointment of a special prosecutor. One day prior to the filing of the conspiracy charge, appellant filed suit in federal court alleging that the Morgan County Prosecutor, among others, had conspired to violate his civil rights by means including false and malicious prosecution. At the instant trial, allegations were made that appellant had threatened the prosecutor's life. Appellant argues these circumstances led to an appearance of improper prosecutorial interest requiring a special prosecutor in his case. Ind.Code § 33–14–1–6 governs the appointment of special prosecutors, who may be appointed upon request if "the court finds by clear and convincing evidence that the appointment is necessary to avoid an actual conflict of interest or there is probable cause to believe that the prosecutor has committed a crime." At a hearing on appellant's motion, the court found no conflict of interest, apparently adopting the State's position that to allow prosecutors to be disqualified merely upon the unilateral action of defendants, *e.g.,* filing lawsuits, would lead to absurd consequences. We agree. A prosecutor's apparent prejudice against a defendant does not satisfy the requirements for appointment of a special prosecutor. *Timmons v. State* (1986), Ind., 500 N.E.2d 1212. The trial court did not err in denying the request for a special prosecutor.

▆▆▆ Appellant contends the trial court erred in its denial of his request for an evidentiary hearing on his motion to dismiss the habitual offender information for vindictive prosecution. The vindictive pros-ecution defense applies when the State reacts to the reversal of a conviction by refiling charges of greater severity in an attempt to attach a penalty to a defendant's successful exercise of his right to file a motion to correct error or to prosecute an appeal. *Hughes v. State* (1985), Ind.App., 473 N.E.2d 630. Here, however, appellant argues the State tried to attach a penalty to appellant's successful defense of a prior escape charge, by charging him as an habitual offender in the totally unrelated case at bar. To allow the defense of prosecutorial vindictiveness to apply to charges resulting from an act committed subsequent to appellant's exercise of his appeal rights would potentially insulate him from criminal liability for any future acts. Since the habitual offender information was not a refiled charge, the trial court properly found no prosecutorial vindictiveness as a matter of law; thus no evidentiary hearing was required.

▆▆▆ Appellant contends the trial court erred in overruling his objection to appearing in prison garb and being held "incommunicado." On the morning of the first day of trial, appellant appeared in court unshaven and in prison denim. He objected to being housed, by court order, at the Department of Correction Reception Center during the trial where he was denied access to shower facilities, proper courtroom attire and a telephone. The court immediately contacted the Reception Center and was informed that water pipes had burst during the night and that arrangements would be made to allow appellant access to his clothing and a telephone to contact witnesses and obtain legal advice. The court then overruled appellant's motion to be moved to another facility. We fail to see any prejudice to appellant as he withdrew from the proceedings before jury selection began and thus was never seen in prison garb by any jurors. Also, the trial court's arrangement with the Reception Center would have corrected appellant's difficulties with his appearance and his access to a telephone, even had appellant not elected to withdraw. Overruling the objection was not error.

■ Appellant contends the trial court erred in sustaining the State's objection to the Court's Proposed Instruction No. 10, which would have instructed the jury to disregard appellant's absence at trial and failure to testify. He argues omitting the instruction violated his right to a fair trial by allowing the jury to infer his guilt from his absence and silence. The State objected to the instruction because "it is reversible error to advise the jury of this instruction over the Defendant's objection," and appellant was not present to make the objection. It is well settled that neither the trial court nor the prosecutor may comment upon defendant's failure to testify. *Williams v. State* (1981), Ind., 426 N.E.2d 662. Appellant argues the lack of any defense objection to the instruction must be construed as an implied request for the instruction, the denial of which was fundamental error. However, while the choice of whether to instruct the jury regarding the defendant's failure to testify belongs to the defendant, he must request the instruction to preserve error. *Hunt v. State* (1973), 260 Ind. 375, 296 N.E.2d 116. Given no indication at trial of appellant's preference for the instruction, and given that he could as easily have claimed prejudice from its being read to the jury, failure to give the instruction was not error.

■ Appellant contends the trial court committed fundamental error by abandoning its position of neutrality and vouching for the State. Before allowing the jury to leave for an extended lunch break made necessary by the delayed arrival of an out-of-town witness, the court told the jury:

> "I think that the Prosecutor is starting to feel guilty about taking this much of your time .. and especially about the delays. Let me assure [you] that I don't view it that way. The prosecutor is doing her job and she is presenting what you need to see and to hear, in order to be able to make a reasoned judgment in this case. Whatever time that takes is the time that is necessary in order for our criminal justice system to work properly."

Appellant argues this instruction sanctioned the State's case and imputed guilt to appellant. However, the court's remarks, when viewed in the context of reassuring the jury that their time was not being wasted, have little potential to prejudice appellant. *See Lewis v. State* (1975), 166 Ind.App. 553, 337 N.E.2d 516. It is apparent from the record the remarks were made merely to maintain the jurors' patience. We fail to see how they could have imputed guilt to appellant. The court's remarks were not fundamental error.

■ Appellant contends his Fifth Amendment rights to due process and to remain silent were violated at trial; he argues the trial court, given appellant's absence, should have prevented *sua sponte* the admission of evidence of appellant's prior bad acts. Appellant was on trial for conspiracy to escape from jail. Proof of this conspiracy involved the testimony of fellow inmates who were aware of the plans to escape, of a co-conspirator on the outside who was coerced by means of threats of violence, and of jail officials who discovered physical evidence of the escape plan. The testimony of appellant's coercion of others necessarily involved the substance of his threats, which incorporated his claims of past acts of violence and how the witness could confirm them. While undoubtedly prejudicial, this testimony was relevant and admissible hearsay as part of the *res gestae* of the crime. *Forehand v. State* (1985), Ind., 479 N.E.2d 552. While other testimony revealing appellant's substantial experience as an inmate and reputation for "questionable at best" integrity may have been of marginal relevance, it clearly fails to merit reversal in the face of the overwhelming evidence of appellant's guilt. *Maiden v. State* (1985), Ind., 477 N.E.2d 275. The trial court committed no fundamental error in admitting the testimony.

Appellant contends fundamental error occurred during final argument when the prosecutor allegedly misrepresented evidence and implied the State was privy to information not known to the jury. We disagree. It is apparent from the record that the prosecutor merely was tying to-

gether the details of the relatively intricate conspiracy. She narrated the unfolding of the evidence from the State's point of view and emphasized how the various strands of proof intertwined and were mutually reinforcing. We find no intimations of access to superior knowledge by the State. During closing argument, counsel may propound any conclusions based upon the attorney's analysis of the evidence. *Cheney v. State* (1985), Ind., 486 N.E.2d 508. Appellant's contention is without merit.

■ Appellant contends the trial court erred by not permitting him to appear and defend at the habitual offender phase of the trial. As set forth above, appellant, *pro se,* insisted upon withdrawing from the proceedings on the first day of trial after his motions for continuance were denied. The trial court assured him the proceedings would continue in his absence and obtained a knowing, intelligent and voluntary waiver of appellant's various constitutional rights, including his right to be present. Appellant's contention that he was not permitted to appear at the habitual phase is meritless, as he never requested to return once he withdrew. Thus he is estopped from claiming he was prejudiced by his continuing absence.

■ Appellant contends the trial court committed fundamental error during the habitual offender phase when it admitted into evidence State's Exhibit No. 49, a criminal docket evidencing a prior conviction for robbery. The docket contained a presentence investigation report which included psychological assessments of appellant. He contends the jury's view of such information, in light of the confidentiality requirements of Ind.Code § 35–38–1–13, was so prejudicial as to deny him fundamental due process, as in *Robinson v. State* (1979), 180 Ind.App. 555, 389 N.E.2d 371. However, the *Robinson* jury was involved in a bifurcated sentencing proceeding, while in the case at bar the jury did not determine sentence, but only whether appellant was an habitual offender. While admission of Exhibit 49 containing a presentence report was erroneous, it did not rise to the level of fundamental error. Errors in sentencing

procedure or in the sentence itself are fundamental, *id.,* but the admission of presentence reports in an habitual proceeding is not reversible error where, as here, the jury was presented with overwhelming proof supporting the habitual offender determination. *Northern v. State* (1986), Ind., 489 N.E.2d 520. Admission of the exhibit containing a presentence report was not fundamental error.

Appellant contends the trial court erred at sentencing by failing to advise him of the jury's verdict as required by Ind.Code § 35–38–1–5. The record reveals that at the sentencing hearing, appellant was present and was told by the court:

> "All right, having duly considered the pre-sentence investigation, and the arguments and corrections that were made here this morning, I find that you were found guilty of the offense of Conspiracy to Commit the Crime of Escape. Also that you were found to be an Habitual Offender."

Appellant was duly advised of the jury's verdict. His contention is without merit.

■ Appellant contends the trial court committed fundamental error in its denial of an evidentiary hearing on perjured testimony alleged in his motion to correct error. Appellant sought to assign error based upon evidence outside the record; he requested an evidentiary hearing to prove that five of the State's witnesses gave perjured testimony. He filed several affidavits in support of his perjury allegations, as per Ind.R.Tr.P. 59(H)(1) and Ind.R.Cr.P. 17. However, the affidavits did not specify what testimony was perjured nor allege sufficient facts for the court to rule on the allegations. The trial rules contemplate the use of affidavits alleging the grounds for error with sufficient particularity that an evidentiary hearing is not necessary. *See Keys v. State* (1979), 271 Ind. 52, 390 N.E.2d 148. Here, rather than merely alleging he had personal knowledge of perjury and could produce "material witnesses," appellant should have included in his affidavit, for example, the sworn statements of the material witnesses themselves. Moreover, the affidavits failed to

allege the evidence of perjury was newly-discovered. *Johnson v. Rutoskey* (1984), Ind.App., 472 N.E.2d 620. It is apparent from the face of the affidavits that appellant should have been aware of the alleged perjury at trial, given his "personal knowledge," and revealed it in the course of his cross-examination of the witnesses. Evidence which the moving party neglected to offer at trial is not properly presented in affidavits submitted with a motion to correct error. *Mid–States Aircraft Engines, Inc. v. Mize Co., Inc.* (1984), Ind.App., 467 N.E.2d 1242. The request for an evidentiary hearing was properly denied.

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., concurs in result without separate opinion.