## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 25 2019, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald E.C. Leicht
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| E.P.,<br>*Appellant-Respondent,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Petitioner* | April 25, 2019<br><br>Court of Appeals Case No.<br>18A-JV-2189<br><br>Appeal from the Howard Circuit Court<br><br>The Honorable Lynn Murray, Judge<br><br>Trial Court Cause Nos.<br>34C01-1511-JD-378<br>34C01-1512-JD-436 |

**Baker, Judge.**

[1] E.P. appeals the juvenile court's modification of disposition order committing him to the Indiana Department of Correction (DOC), arguing that the juvenile court erred by not placing him in a more rehabilitative environment. Finding no error, we affirm.

# Facts

[2] On November 9, 2015, then-fifteen-year-old E.P. was detained following a traffic stop. The State filed a delinquency petition, alleging that E.P. was delinquent for committing acts that would be Level 6 felony auto theft and Class C misdemeanor operating a motor vehicle without a license had they been committed by an adult. On December 16, 2015, pursuant to a plea agreement, E.P. admitted to operating a motor vehicle without a license had it been committed by an adult in exchange for dismissal of the auto theft allegation. The juvenile court scheduled disposition of the matter for a later date.

[3] However, on December 30, 2015, before disposition, the State alleged that E.P. was delinquent for committing new acts that would amount to five counts of Level 6 felony escape had they been committed by an adult. At the January 11, 2016, hearing for all the aforementioned charges, the juvenile court awarded wardship of E.P. to either the DOC or any community-based correctional facility for minors. E.P. was placed in the DOC.

[4]     The following represents a timeline of the events that occurred after E.P. was released from the DOC:

- On August 8, 2016, the juvenile court resumed jurisdiction over E.P. after he was released from the DOC; it then placed him in the Re-entry Program in a Shelter Care Unit of the Robert Kinsey Youth Center.
- On August 22, 2016, the juvenile court ordered E.P's release from the Youth Center and sent him to live with his grandmother on supervised probation.
- On October 7, 2016, the juvenile court found probable cause that E.P. was consuming illegal substances and that he had committed an act that would be Class C misdemeanor illegal consumption of an alcoholic beverage had it been committed by an adult. After E.P.'s November 14, 2016, review hearing, the juvenile court ordered E.P. to remain on supervised probation with his grandmother.
- On December 12, 2016, E.P. failed to appear in court, and the juvenile court ordered that E.P. be taken into custody. On December 14, 2016, the juvenile court once again ordered E.P. to remain on supervised probation with his grandmother.
- On January 23, 2017, E.P. again failed to appear in court, and the juvenile court once more ordered that E.P. be taken into custody. The juvenile court ordered that E.P. be re-placed in the Robert Kinsey Youth Center, with a modification hearing set for a later date.
- On January 30, 2017, the probation department filed a verified Petition for Modification of Disposition. E.P. admitted to his prior violations, and on February 6, 2017, the juvenile court transferred E.P. to the Secure Detention Unit of the Robert Kinsey Youth Center for thirty days. Thereafter, E.P. would again be placed on supervised probation.
- On April 2, 2017, the probation department filed another verified Petition for Modification of Disposition, and E.P. admitted to have committed acts that would be Level 6 felony possession of methamphetamine and Class C misdemeanor possession of paraphernalia had they been committed by an adult. Before the modification of disposition hearing took place, the probation department recommended that E.P. be placed in the DOC.
- At E.P.'s May 22, October 30, and December 11, 2017, review hearings, the juvenile court ordered for E.P.'s continued placement in the Juvenile Commitment Alternative Program (JCAP), along with continuing probation thereafter.

- On March 5, 2018, the juvenile court found probable cause that E.P. committed an act that would be Class B misdemeanor false informing had it been committed by an adult and that he had left home without permission.
- At E.P.'s March 16, 2018, modification of disposition hearing, the juvenile court once again placed E.P. in the Secure Detention Unit at the Robert Kinsey Youth Center for 120 days. At this same hearing, the juvenile court found E.P. to be in contempt of court for spewing obscenities and disrupting the proceedings.
- On May 18, 2018, the probation department filed another verified Petition for Modification of Disposition on suspicion that E.P. was possessing methamphetamine and syringes and that he committed an act that would be battery had it been committed by an adult. E.P. admitted to these charges but denied possessing any paraphernalia.
- At E.P.'s July 9, 2018, dispositional hearing, the juvenile court granted the DOC wardship over E.P. and suspended supervised probation.
- On August 8, 2018, the probation department recommended that E.P. be committed to the DOC. At E.P.'s August 13, 2018, modification of disposition hearing, the juvenile court revoked E.P.'s probation and placed him in the DOC.

E.P. now appeals.

# Discussion and Decision

[5] E.P. argues that the juvenile court erred when it placed him in the DOC. Specifically, E.P. contends that he should have been placed in a more rehabilitative environment as a modification of his disposition.

[6] We will reverse a juvenile court's placement of a delinquent minor only if the decision is clearly against the logic and effect of the facts and circumstances before it. *C.C. v. State*, 831 N.E.2d 215, 216-17 (Ind. Ct. App. 2005). The choice of a disposition for a juvenile is within the sound discretion of the juvenile court, and it is accorded wide flexibility in making that judgment. *E.L. v. State*,

783 N.E.2d 360, 366 (Ind. Ct. App. 2003). That disposition is subject, however, to the statutory considerations of the welfare of the child, the community's safety, and the policy of favoring the least harsh disposition. *Id.*

[7] Indiana Code section 31-37-18-6(1) states that a juvenile court shall enter a dispositional decree that is "in the least restrictive (most family like) and most appropriate setting available; and . . . [is] consistent with the best interest and special needs of the child[.]" E.P. argues that the DOC was not the most appropriate setting available due to his substance abuse issues, and therefore, this placement was not consistent with his best interest and special needs.

[8] While the goal of child placement within the juvenile court system is rehabilitation and not punishment, *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010), the ultimate decision to place E.P. in the DOC was still appropriate, and the juvenile court did not err by doing so.

[9] When presented with multiple opportunities for rehabilitation over the course of roughly three years, E.P. has shown few signs of progress at any placement. When he was in court, E.P. showed a blatant disrespect for the system and disrupted the proceedings by spewing obscenities. Whether he was in the Secure Detention Unit of the Robert Kinsey Youth Center or the JCAP, E.P. did not improve his behavior through the available programs. And when he was on supervised probation, E.P. either committed some sort of delinquent act such as illegal consumption of alcohol or possession of methamphetamine, fled from home, or failed to appear at his required hearings. Moreover, this Court

has already held that "violation of a single condition of probation is sufficient to revoke probation." *M.J.H. v. State*, 783 N.E.2d 376, 377 (Ind. Ct. App. 2003). Yet, the juvenile court chose time and time again to allow E.P. to remain on supervised probation even after multiple violations. His constant run-ins with the law and delinquency adjudications are further evidence that he has no interest in rehabilitation through the current least restrictive resources available.

[10]   E.P. disagrees, arguing that placement in the DOC was not the least restrictive option for treatment since he suffers from substance abuse issues. In the past, this Court has held that a delinquent juvenile's placement with the DOC may still be appropriate even if less restrictive alternatives are available. *K.A. v. State*, 775 N.E.2d 382, 386-87 (Ind. Ct. App. 2002). Given E.P.'s dangerous behavior of consuming controlled substances, committing battery and possession of paraphernalia, operating vehicles without a license, multiple violations of probation, and tendencies to evade law enforcement and to flee his home, placement in the DOC is an appropriate option. *See J.B. v. State*, 849 N.E.2d 714, 718-19 (Ind. Ct. App. 2006) (holding that juvenile's placement in DOC was warranted after violating probation, committing new offenses, and failing to take advantage of prior opportunities for treatment). Furthermore, the juvenile court has already given E.P. numerous chances for reform and could have ordered placement in the DOC at an earlier time; nevertheless, the juvenile court showed leniency and exhausted all options.

Consistent with E.P.'s best interests and the safety of the surrounding community, it was not erroneous for the juvenile court to modify E.P.'s disposition by placing him in the DOC.

The judgment of the juvenile court is affirmed.

Najam, J., and Robb, J., concur.